# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| ROBIN KUMAR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:12-cv-01216 |
| | ) | |
| v. | ) | Judge Sharp |
| | ) | Magistrate Judge Griffin |
| THE VANDERBILT UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Defendant Vanderbilt University ("Defendant" or "Vanderbilt") filed a Motion for Summary Judgment (Docket Entry No. 16), to which Plaintiff Robin Kumar ("Plaintiff" or "Kumar") filed a response (Docket Entry No. 30), and Defendant filed a reply (Docket Entry No. 34). For the reasons discussed herein, Defendant's motion will be denied.

## RELEVANT FACTS

Plaintiff Robin Kumar began her employment with Defendant, Vanderbilt University, in 1987.[1] She was an assistant to Jane Birmingham at the Owen Graduate School of Management and held this position for three years. Plaintiff was then promoted to Administrative Assistant, working in Kirkland Hall at the Alumni Development Office, and was in this position for four years. She was again promoted in the Alumni and Development Office to the position of Assistant Director of Pledges and held this position for three or four years before being moved to

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Entry Nos. 31 and 32) and related declarations and exhibits. The Court notes that Defendant did not file its responses to Plaintiff's Statement of Undisputed Material Facts in accordance with Local Rule 56.01(c) and (d), which states "[e]ach such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute." In any event, and based upon the record, the specific facts set forth in this Court's summary appear to be a fair characterization of the facts relevant to the issues presented in the filings.

the Canby Robinson Society ("CRS") in the spring of 1998, where she was the Program Coordinator. Plaintiff reported to Nancy Strohman for a brief period of time and then to Missy Eason, to whom she reported until Eason left Vanderbilt in 2009.

CRS is the largest donor society at Vanderbilt, and Plaintiff's position was one of some prestige and notoriety. It receives gifts of one thousand dollars ($1,000.00) or more, and those gifts are dedicated to the medical community at Vanderbilt. In the beginning of Plaintiff's career with CRS, her job title was Program Coordinator and was mainly an administrative position. As Program Coordinator, Plaintiff managed the day-to-day operations, which included thank-you letters to donors, welcome packets for new members, supporting the Director, participating in board meetings and outreach tours. She also supervised the office staff.

Eason began giving Plaintiff more responsibilities such as handling the Adopt-A-Scholar program, which entailed matching board members with students during the student's semester in school. Plaintiff followed up with the students and made sure they were communicating with their board member. In 2007 Eason hired Anna Hance to handle some of Plaintiff's clerical job responsibilities, such as filing and mail merging letters to donors. Hance reported to Plaintiff. Hance was hired to take on the clerical responsibilities, which allowed Plaintiff to handle the other areas associated with the CRS. After Hance was hired, Plaintiff began coordinating the outreach tours with Eason. Plaintiff eventually took over the job duties for the outreach tours, which showcased specific areas at Vanderbilt. Preparation for the outreach tour included working with the development officer to set it up, inviting guests, and coordinating banquets. Plaintiff also assisted in organizing events like the donor recognition dinner once a year, a very large and prestigious event. She was also very helpful to Eason because she visited patients in the hospital as a representative of the Vice Chancellor. She contributed greatly to the outreach

effort in the hospital on behalf of donor relations. Plaintiff also assisted with a new program setting up doctor's appointments for the donors.

In June, 2009, Dr. Harry Jacobson stepped down as Vice-Chancellor for Medical Affairs of the University and was replaced by Dr. Jeff Balser, Dean of the School of Medicine. At Balser's request, the fundraising activities for the Medical Center were reorganized and the CRS and other Medical Center fundraising activities were placed under the supervision of the Department of Development & Alumni Relations ("DAR"). In June 2009, all of the Medical Center donor relations, donor society and advisory board/council management activities were transferred to the DAR with most of those activities, including the CRS, reporting to Doug Twells, Associate Vice Chancellor for VUMC Development after Eason resigned and left Vanderbilt in June, 2009.

After the reorganization and Eason's departure, Plaintiff's job title remained Program Coordinator, but her responsibilities changed. Plaintiff reported to Randy Farmer, Head of the Medical Development, and Twells. Plaintiff became the point person for the CRS, with Hance remaining as her assistant. Plaintiff handled all of the board meetings, outreach tours, scholarship receptions and the donor receptions in 2010.

In February 2010, Linde Pflaum was hired as the newly created Director of Advisory Councils. In June 2010 Plaintiff was called into a meeting with Twells and Susie Stalcup, Vice Chancellor for DAR, wherein she was advised that she would be reporting to Pflaum, due to Twell's upcoming departure. Plaintiff was also advised that her office would be moved from the eighth floor of the Medical Center North to the seventh floor of 2525 West End Avenue. Plaintiff's office was beside Pfluam's office after she moved. Plaintiff began reporting to Pflaum on July 1, 2010.

Pflaum and Plaintiff went through a list of job duties and functions together when she began reporting to her. Plaintiff continued to carry out her CRS duties as well, in addition to working with the advisory council and kept Pflaum apprised of everything that she was handling for CRS. Plaintiff assisted with all the board meetings including the cancer board, diabetes board, Children's Hospital board, and heart board, to name a few. She took on additional responsibilities for coordinating events, attended all the board and council meetings and took notes, and communicated with the board members following the meetings. Plaintiff no longer was just part of CRS, but now handled work for the Vanderbilt Eye Institute, the Vanderbilt Bill Wilkerson Center, the Vanderbilt-Ingram Cancer Center, the Vanderbilt Heart Advisory Council, the Kennedy Center Leadership Council, and Vanderbilt Children's Hospital.

Pflaum did not have any counseling sessions or complaints about Plaintiff's job performance. The only issue Pflaum had with her was an incident where she spent too much money on a luncheon for the nominating committee. Other than the budget, Pflaum did not have any concerns about Plaintiff. According to Plaintiff, after Pflaum took over, Plaintiff began experiencing adverse changes in her job. Plaintiff was moved from her office, with a window overlooking West End, to a smaller windowless office down the hall from the other staff in her department. Plaintiff's office was the only office on that side of the building.

Plaintiff had a schedule of 8:00 a.m. to 4:00 p.m. while she reported to Farmer and Twells, so that she could pick her children up from daycare. Upon being transferred to Pflaum's supervision, she advised Pflaum of her current work hours. However, she advised Pflaum that if she could work later on occasion for board meetings or events. Pflaum advised Plaintiff that DAR employees worked 8:00 a.m. to 5:00 p.m. At that time Pflaum asked Plaintiff to write a proposal to request a 7:30 a.m. to 4:00 p.m. schedule. In her proposal, Plaintiff advised her

4

supervisor that she was happy to stay until 4:30 p.m. on a daily basis. Plaintiff wrote the proposal in July 2010, and her request was denied in September 2010. The direct supervisor (Pflaum) makes the decision as to an employee's hours of work. Plaintiff's hours would be 8:00 a.m. to 5:00 p.m. daily and that was nonnegotiable and effective immediately.

According to Plaintiff, Kate Snowden, in her twenties, Talmadge Ingham-Johnsen's[2] assistant, was able to leave every day at 4:00 p.m. in order to attend classes, even though she only had classes two days a week. (Kumar Depo., p. 57). Ingham-Johnsen, in her thirties, would leave early to go to church meetings at 4:00 p.m. Natasha Miller, in her thirties, was allowed to work through her lunch to leave at 4:00 p.m. at least once a week to work her second job. (*Id.*, p. 90). Tom Tracy, another employee in DAR, was allowed to leave at 3:00 p.m. or 3:30 p.m. in order to beat the traffic. (*Id.*, pp. 91-92).[3]

Plaintiff also discovered during this time that Hance was no longer reporting to her as an assistant, but was reporting directly to Pflaum. Hance and Pflaum began to handle all the projects for CRS and Plaintiff had to turn over all her files to Hance, who was in her twenties. Hance was now organizing Plaintiff's files for the CRS, updating the timeline in regards to the events, handling board members' requests, logistics, and helping with events.

In February 2011, Plaintiff was called into a meeting with Ingham-Johnsen and Pflaum. Plaintiff was given a new job description (Vanderbilt University Medical Center Program Coordinator) and advised that beginning the following Monday she would be reporting to Ingham-Johnsen. Plaintiff was not given any explanation for the change in management except

---

[2] Ingham-Johnsen was the Director of Stewardship.

[3] According to Defendant, these assertions are directly contradicted by the Declarations of the affected employees and the affidavit of Ingham-Johnsen. (Docket Entry No. 34 at 3).

5

that her abilities could be used in Ingham-Johnsen's area. The DAR department was not understaffed at the time Plaintiff was transferred.

Plaintiff's job responsibilities changed.[4] Plaintiff no longer interacted with major donors and board members but performed menial and clerical tasks. She was relegated to an office assistant and a messenger instead of handling donor relations and working with various boards. (Kumar Depo., p. 31). Plaintiff's duties now included running a report to acquire donors for specific groups, mail merging the letters, producing letters to Communications Department for proofing, and getting final approval. Plaintiff would deliver the letters to the Vice Chancellor and then pick up letters from the nursing school, the Vice Chancellor, and the Children's Hospital, all in her own vehicle. Plaintiff would pick up the letters between 4:30 p.m. and 5:00 p.m. every day. Plaintiff took over this process from Kate Snowden, Ingham-Johnsen's assistant. Snowden trained Plaintiff to do this job. (Kumar Depo., p. 47). Snowden advised Plaintiff that it was solely the job of communications to proof and edit letters, and that all she needed to do was mail merge creating the letter.

In March of 2011, Plaintiff was advised by Ingham-Johnsen that she [Kumar] should be doing more in the letter process. Ingham-Johnsen wanted to have the letters proofed *before* the letters were taken to communications. Sara Malin (a female in her thirties), who was Ingham-Johnsen's supervisor, would stand outside of Plaintiff's office multiple times throughout the day in an intimidating and micro-managing posture. Malin's office was at the end of the hall, and Plaintiff's office was in the mid-wing. Malin told Ingham-Johnsen that they needed to know Plaintiff's whereabouts at all times. Other employees, including Snowden, were allowed to leave

---

[4] Plaintiff's salary remained unchanged from June, 2009, except for a salary increase which she received in 2010.

6

without reporting to upper management. (Kumar Depo., p. 79). Plaintiff was always accessible by either email or her cell phone when she was out of the office.

In May 2011, Ingham-Johnsen and Plaintiff had another meeting regarding her performance and job responsibilities. Ingham-Johnsen told Plaintiff that there would be progressive disciplinary actions taken leading to possible termination if her work did not improve. Plaintiff was also advised to remove CRS from her email and voicemail; she was not to attend any more CRS events, where she had spent years culminating relationships; and she would adhere to the schedule of 8:00 a.m. to 5:00 p.m. and advise Ingham-Johnsen of her whereabouts at all times when she left the office. Plaintiff advised Ingham-Johnsen of her planned attendance at an event set for the Children's Hospital, because she was asked by a development officer to attend. Plaintiff removed the CRS information as requested and was given permission to attend the event for the Children's Hospital.

Shortly after the meeting with Ingham-Johnsen in May, Plaintiff requested medical leave under the Family Medical Leave Act ("FMLA") because she was experiencing body pains, her blood pressure was elevated, and her heart was racing. Plaintiff's doctor, an internist, felt that Plaintiff was physically and mentally unable to perform any normal job functions. He excused her from work from May 20 – 27, 2011. Plaintiff later requested medical leave in June 2011 to care for her son, who was scheduled for a tonsillectomy. Plaintiff was diagnosed in June 2011 with chronic severe depression and anxiety. She did not return to Vanderbilt.[5]

---

[5] After Plaintiff's twelve weeks of FMLA leave were exhausted, her leave was converted to non-FMLA leave, and subsequently to long term disability ("LTD") under Vanderbilt policies. Defendant continued to hold her position pending her return to work until December 6, 2011. Plaintiff was provided an additional two weeks of unpaid leave through December 20, 2011, but was advised that her employment with Vanderbilt would end if she was not on an approved leave status or actively engaged in the accommodation process by December 20, 2011. Plaintiff subsequently advised Malin and Ingham-Johnsen that her request for LTD had been approved on or about December 7, 2011.

According to Plaintiff, she was suffering from stress due to her workload, having her job diminished to back office work, from being replaced by her former assistant, Hance, who was in her twenties, and being harassed/micro-managed. Kevin Teh in the EAD office at Vanderbilt assisted Plaintiff in signing up for short-term disability. Snowden, in her twenties, took over Plaintiff's position temporarily in May 2011 and in February 2012 was permanently hired to the position previously held by Plaintiff.

All of these changes made Plaintiff feel like she was isolated from the team and that she was being pushed out without actually being terminated. Twells advised Plaintiff in January 2011, before he retired, that she needed to be careful because they [Defendant] were looking at getting rid of her. (Kumar Depo., p. 44). According to Defendant, however, Plaintiff did not report her conversation with Twells to anyone at Vanderbilt, nor did anyone else mention to her that "someone" was trying to get rid of her. (Docket Entry No. 17 at 10).

## **ANALYSIS**

Plaintiff, age fifty-one at the time of her termination, asserts a single claim of age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*. Defendant has moved for summary judgment on this claim.

**I.    Summary Judgment Standard**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is

disputed.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial.  If the party does not so respond, summary judgment will be entered if appropriate.  Fed. R. Civ. P. 56(e).  The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     Age Discrimination Claim

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his ... employment" based on age.  29 U.S.C.A. § 623(a)(1) (2008).  To establish the employer's liability, the employee must prove by a preponderance of the evidence that age is the but-for cause of the employer's decision. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009); *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009).  An employee may establish an age discrimination case by direct

or circumstantial evidence. *Id.* Here, Plaintiff attempts to resist summary judgment by alleging the record presents that of circumstantial evidence.

In the absence of direct evidence, Plaintiff's ADEA claim is analyzed under the familiar evidentiary framework for cases based on circumstantial evidence set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Cf. Geiger,* 579 F.3d at 622. Under that framework, Plaintiff must first establish a *prima facie* case of age discrimination. *Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 410 (6th Cir. 2008) (citing *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997)). If she carries that burden, the burden shifts to Defendant to present a legitimate, non-discriminatory reason for its actions. *Id.* at 410 (citing *Kline,* 128 F.3d at 342). Upon Defendant's offer of such a reason, the burden shifts back to Plaintiff to present sufficient evidence of pretext for the jury to reject Defendant's explanation. *Id.* at 411–12; *Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 394 (6th Cir. 2008).

"To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show that (1) [s]he was at least 40 years old at the time of the alleged discrimination, (2) [s]he was subjected to an adverse employment action, (3) [s]he was otherwise qualified for the position, and (4) [s]he was rejected and someone outside the protected class was selected." *Harris v. Metro. Govt. of Nashville and Davidson County*, 594 F.3d 476, 485 (6th Cir. 2010). For purposes of the current motion, elements one and three – that Plaintiff was at least 40 years old at the time of the alleged discrimination and she was otherwise qualified for the position – are not in dispute. The parties disagree, however, as to whether Plaintiff has met the second and fourth prongs of her *prima facie* case.

Plaintiff claims she was subjected to an adverse employment action and was replaced by someone younger than her.[6] Specifically, Plaintiff alleges that she suffered adverse employment action because she was "repeatedly demoted, given a lesser job title and her job responsibilities significantly diminished." (Docket Entry No. 30 at 12). Further, Plaintiff argues those job duties were ultimately shifted to a younger employee (Hance). Defendant contends that contrary to her argument, Plaintiff was not demoted since her title and pay remained the same. (Docket Entry No. 34 at 4). Under both Pflaum and Ingham-Johnsen, "she was assigned more specific tasks for which she could be held accountable" for those duties. (*Id.*). Additionally, as to Plaintiff's argument regarding Hance, Defendant responds in one sentence by stating "[] Hance continued to perform the same duties after [] Pflaum assumed responsibility for the CRS in July 2010 as she did when [] Eason was responsible for the CRS." (*Id.*).

An ADEA plaintiff is required to prove a materially adverse employment action. *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004). An adverse employment action is a "materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct." *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Under this standard, a "materially adverse" change in employment conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id*. at 886. (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). "The Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and,

---

[6] Moreover, Plaintiff claims she was treated differently than some of the other employees. She purports that "some employees younger" than her were "permitted to alter their working hours" while she was not. (Docket Entry No. 30 at 14). To this, Defendant responds Plaintiff's statements in this regard are "directly contradicted by the Declarations of the affected employees." (Docket Entry No. 34 at 3). And furthermore, Defendant contends Plaintiff herself was allowed to leave early two days a week by Ingham-Johnson. (*Id.*). Ultimately though, Defendant argues that such accommodations do not constitute an adverse action or disparate treatment. (Docket Entry No. 17 at 12).

11

thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). A "bruised ego" is simply not enough to constitute an adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (*en banc*) (quoting *Kocsis*, 97 F.3d at 886); *see* also, *Mitchell*, 389 F.3d at 181.

As to the second prong of her *prima facie* case, Plaintiff has presented sufficient evidence, which calls into question whether the alterations of her employment under both Pflaum and Ingham-Johnsen were materially adverse. Although Defendant posits that "[a] comparison of her job duties [under the new supervision] reflects that she continued to perform primarily clerical and administrative duties," Plaintiff counters she was "repeatedly demoted, given a lessor job title and her responsibilities significantly diminished." The Court finds there is a factual determination that must be made by the jury as to whether there was a "materially adverse" change in Plaintiff's employment situation under the supervision of Phlaum and Ingham-Johnsen. *See*, *Kocsis*, 97 F.3d at 886.

There are also material questions of fact regarding the fourth prong of Plaintiff's *prima facie* case – as to whether Plaintiff was replaced by a younger employee outside the protected class. According to Plaintiff, after the DAR reorganization and departure of Eason, she became the point person for the CRS, with Hance remaining as her assistant Plaintiff. However, under the supervision of Pflaum, she had to turn over all her files to Hance, who was in her twenties – and it was Hance who replaced by her.[7] However according to Defendant, this is not true. Viewing the evidence in the light most favorable to Plaintiff, the circumstantial evidence presented by her provides a basis upon which a reasonable juror could find that Defendant acted with discriminatory animus based on age.

---

[7] It is undisputed by the parties, however, that Snowden ultimately replaced Plaintiff when she did not return from FMLA.

Lastly, Defendant argues that Plaintiff cannot meet the "but for" standard necessary to make out a claim of age discrimination. (Docket Entry No. 34 at 4). Here, the evidence, taken as a whole and in the light most favorable to Plaintiff, is sufficient to permit a reasonable juror to conclude that Plaintiff's age was the but-for cause of Defendant's actions during her employment with them. Although Defendant may ultimately demonstrate otherwise, Plaintiff has met her burden to come forward with evidence sufficient to establish that a genuine issue of material fact exists for trial.

## **CONCLUSION**

For all of the reasons stated, Defendant's Motion for Summary Judgment (Docket Entry No. 16) will be denied.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE